Filed 7/23/26  P. v. Lee CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>JAMES RYAN LEE,<br><br>  Defendant and Appellant. | G065687<br><br>(Super. Ct. No. 21HF0335)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Robert A. Knox, Judge. Affirmed.

James R. Bostwick, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General, Christopher P. Beesley and Namita Patel, Deputy Attorneys General, for Plaintiff and Respondent.

\*      \*      \*

## INTRODUCTION

Defendant James Ryan Lee was charged with driving under the influence of alcohol causing great bodily injury under Vehicle Code section 23153(a) and alleged a related enhancement under Penal Code section 12022.7(a). Before trial, Lee moved to suppress evidence from a warrantless blood draw under Penal Code section 1538.5(a)(1)(A). The trial court denied the motion on the basis that the prosecution had proven exigent circumstances such that the police officer could order a warrantless blood draw without offending the Fourth Amendment to the United States Constitution. The jury convicted Lee of driving under the influence of alcohol causing great bodily injury.

Lee appeals from his conviction on grounds that (1) the trial court erred by denying his motion to suppress and (2) denial of his motion to suppress constituted prejudicial error. We conclude that police staffing shortages caused by COVID-19, the time necessary to obtain a warrant, reliance on Lee's agreement to a breath test, distancing protocols, and other factors justified the trial court's finding of exigency. We also conclude that, even if the trial court did err by denying Lee's motion to suppress, the error was harmless beyond a reasonable doubt. Accordingly, we affirm.

## FACTS

At about 11:40 p.m. on April 3, 2020, Officers Jacob Baskin and Frederick Hsu of the Irvine Police Department (IPD) were dispatched to a two-car traffic collision at the intersection of Red Hill Avenue and MacArthur Boulevard. A witness, Angelina Smith, described how a red Ford Mustang zoomed past her at an estimated 100 miles per hour, ran a red light, and collided with a white Dodge Challenger in "an explosion of glass."

2

When the officers arrived at the scene, Carlos Mancilla Medina lay unconscious in his Challenger, his legs propped up on his driver's seat as he breathed "deep, agonal breathing." The white Dodge Challenger had sustained moderate to major damage to the front passenger side, while the red Mustang had sustained major front end damage. The damage to the vehicles was consistent with the witness's description of the collision. Baskin used a breaching tool to break the window of the Challenger. The fire department arrived and, with Officer Baskin's assistance, extricated Medina from the Challenger.

While Officer Baskin was helping Medina, Lee was removed from his vehicle and emergency medical services loaded him onto a gurney. Turning his attention to Lee, Officer Baskin peered into the red Mustang saw a small green cylindrical plastic container, a type often used to hold cannabis, on the Mustang's floorboard. Just before Lee was loaded onto an ambulance, Officer Baskin detected an odor of alcohol on Lee's breath and recalled that Lee had slurred speech.

Officers Baskin and Hsu went to the hospital where Lee and Medina had been taken. Baskin immediately went to the trauma room in which Lee was being treated. Baskin, suspecting that Lee had been driving under the influence, questioned and examined him. Lee admitted to Officer Baskin that during the course of the evening he had consumed five or six shots of Hennessy, a distilled spirit, and felt their effects. Lee also admitted he had smoked a "blunt" of marijuana the prior morning. Officer Baskin observed that Lee exhibited objective signs of intoxication, including slurred speech, watery bloodshot eyes, and poor perception of time. Officer Hsu also observed that Lee had slurred speech and his eyes were red and bloodshot. At

that time, Officer Baskin performed a horizontal gaze nystagmus (HGN) test on Lee, and Lee displayed all six of the HGN test's indicia of intoxication.

Based on all of those indicia of intoxication, as well as the circumstances of collision, Officer Baskin concluded that Lee had been driving under the influence when the collision occurred. Officer Baskin placed Lee under arrest. Earlier, Lee had agreed to a breath test, and so Officer Baskin walked out to his patrol car to retrieve the breath machine. When he returned to Lee's room, he was informed he could not administer the breath test because hospital staff needed to intubate Lee and render him unconscious.

Although Lee had not consented to a blood test, Officer Baskin had a phlebotomist draw blood from Lee after he was unconscious. At no point did Officer Baskin seek a search warrant.

Two analyses of that blood draw showed that, at about two hours after the accident, Lee's blood alcohol level was 0.133% and 0.138%. Benzodiazepines and tetrahydrocannabinol (THC) also were found in Lee's system. A forensic scientist given a hypothetical mirroring the facts of this case concluded the hypothetical person was impaired for the purpose of driving.

When Medina was admitted to the hospital, he was in critical condition and placed in intensive care. Medina suffered injuries including fractures to his spine, right femur, left shoulder blade, left clavicle, and face. Lee suffered a concussion, fractures to his left and right wrists, a leg fracture, and facial lacerations.

# PROCEDURAL HISTORY

Lee was charged with one count of driving under the influence of alcohol causing injury under Vehicle Code section 23153(a) (count 1), driving with a blood alcohol level of 0.08 percent or more causing injury under Vehicle Code section 23153(b) (count 2), and driving under the combined influence of alcohol and drugs causing injury under Vehicle Code section 23153(g) (count 3). As to all three counts, it was alleged that Lee had inflicted great bodily injury under Penal Code section 12022.7(a).

Before trial, Lee moved to suppress the blood test evidence pursuant to Penal Code section 1538.5(a)(1)(A). After Officer Baskin testified on the matter, the trial court denied Lee's motion.

The jury convicted Lee on count 1 of driving under the influence of alcohol causing injury and as to that count found to be true the allegation of causing great bodily injury. The jury found Lee not guilty on count 3. The jury announced that it was deadlocked on count 2, and the trial court declared a mistrial on and later dismissed that count in the interest of justice. The court sentenced Lee to formal probation for a period of five years. Lee appeals his conviction on grounds that the trial court erred in denying his motion to suppress.

# DISCUSSION

## I.

## Standard of Review

Under Penal Code section 1538.5(a)(1)(A), a defendant may move to suppress as evidence anything obtained as a result of an unreasonable search or seizure conducted without a warrant. A warrantless search is presumed to be unreasonable, and the prosecution bears the burden of

proving that the search was reasonable. (*People v. Redd* (2010) 48 Cal.4th 691, 719.)

Our review is limited to the evidence presented at the hearing on the motion to suppress. (*People v. Garry* (2007) 156 Cal.App.4th 1100, 1105, fn. 2; *People v. Fiscalini* (1991) 228 Cal.App.3d 1639, 1644, fn. 5.) In reviewing the trial court's denial of a motion to suppress, we defer to the trial court's factual findings when supported by substantial evidence. (*People v. Redd, supra,* 48 Cal.4th at p. 719.) We reconsider neither the weight to be given to evidence nor the credibility of a witness's testimony. (*People v. Navarro* (2021) 12 Cal.5th 285, 302.) We exercise our independent judgment in determining whether, on the facts found by the trial court, the search was reasonable under the Fourth Amendment. (*Redd,* at p. 719.)

## II.

### The Suppression Hearing

The trial court held a suppression hearing to consider Lee's motion. Officer Baskin was the only witness at the hearing.

A. *Officer Baskin's Testimony*

Officer Baskin testified as follows:

Although he was a certified drug recognition expert, Officer Baskin was serving regular patrol in April 2020. At the scene of the accident, Officer Baskin first came into contact with Lee while he was being loaded onto a gurney. Baskin smelled alcohol on Lee's breath and saw a cannister typically used for holding cannabis sat on the floorboard of Lee's car. Officer Baskin spoke with Lee for one or two minutes while Lee lay on the gurney. At 12:11 a.m., the ambulance transported Lee to the hospital, where the officers arrived at 12:25 a.m.

6

At 12:37 a.m., Officer Baskin asked Lee what time it was, to which Lee answered 1:30 a.m. Lee's distorted perception of time indicated to Officer Baskin that Lee had consumed drugs or alcohol. Lee admitted to Officer Baskin that, starting at around 7:00 p.m. that night, he had consumed five or six shots of Hennessy, a hard liquor. Officer Baskin then conducted an HGN test. In an HGN test, an officer holds a stimulus between twelve to fifteen inches from the subject's eyes and passes it back and forth to test whether the subject has any optical impairments. Lee's eyes exhibited all six indicia of intoxication which HGN tests provide, including "involuntary jerking."[1] Officer Baskin did not have the opportunity to conduct other sobriety tests because the hospital staff was "pressing" him about needing to render Lee unconscious or intubate him.

When Officer Baskin arrived at the hospital, he did not believe there was probable cause for a warrant. It was only at 12:58 a.m., after speaking with Lee and administering the HGN test, that Officer Baskin determined that he had probable cause to arrest Lee or to obtain a search

---

[1] In a footnote in the appellant's opening brief and in the appellant's reply brief, Lee contends the HGN test violated protocol because Officer Baskin was not face-to-face with Lee when the test was conducted. Lee did not object to evidence of HGN test results at the hearing on his suppression motion. During trial, a forensic scientist testifying for the prosecution, testified there could be some information gained from an HGN test conducted on a subject who is lying flat or sitting so long as the subject follows the stimulus using eyes only without moving the subject's head. A forensic toxicologist testifying for Lee testified that he was aware of no literature permitting an HGN test on a subject lying flat and that conducting a bedside HGN test created problems in detecting the clues. It was up to the jury to weigh the conflicting expert testimony and decide whose testimony to credit. (*People v. Orey* (2021) 63 Cal.App.5th 529, 562; see CALCRIM No. 332.)

warrant. Officer Baskin placed Lee under arrest at that time. Six seconds later, Officer Baskin called for a phlebotomist, who arrived at 1:32 a.m.

Officer Baskin did not seek a warrant because, between a forty-minute round trip to the IPD station, ninety minutes to process the warrant, and forty-five minutes for the phlebotomist to arrive, it would have taken nearly three hours to obtain a warrant. No IPD officer could have covered Officer Baskin or processed a warrant for him because COVID-19 depleted the IPD staff to nine on-duty officers, Officer Hsu was responsible for monitoring Medina, and the rest remained at the scene of the accident. As such, Officer Baskin ordered the phlebotomist to perform one blood draw at 1:40 a.m.

During "pre-investigative" questioning, Officer Baskin had asked Lee whether he would consent to a breath test or blood test."[2] Because Lee had consented to a breath test, Officer Baskin left the hospital room to retrieve his breathalyzer from his patrol car. It took Officer Baskin only a few minutes to get the breathalyzer and return to Lee's hospital room. However, when Officer Baskin brought the breathalyzer into Lee's room, hospital staff told him he could not administer the breath test because they were going to intubate Lee. Officer Baskin again asked Lee if he would submit to a blood test; Lee said he did not want to be poked with needles and "I don't want you to give me Coronavirus."

---

[2] Under Vehicle Code section 23612 a person who drives a motor vehicle is deemed to have given consent to a chemical blood or breath test for purposes of determining blood alcohol content if that person is lawfully arrested for specific Vehicle Code offenses. (Veh. Code, § 23612, subd.(a)(1).) A person arrested for driving under the influence of alcohol must be given the choice of a blood or breath test. (*Id*., subd. (a)(2).)

Hospital staff informed Officer Baskin that Lee was going to be transferred. Due to COVID-19, the hospital had already imposed additional precautions and distancing requirements between patients and hospital staff, and Baskin was unsure whether COVID-19 protocols would bar him from having access to Lee.

B. *The Trial Court's Ruling*

The trial court concluded that Officer Baskin faced exigent circumstances which allowed him to order a blood test without a warrant. In reaching this conclusion, the trial court made the following findings:

First, Officer Baskin did not have probable cause to arrest Lee after speaking with him at the hospital. Officer Baskin relied in good faith on Lee's consent to a breath test but was unable to perform the breath test because the hospital unexpectedly intubated Lee.

Second, COVID-19 left IPD with a "skeleton crew." Because every IPD officer was responsible for the accident in some capacity, nobody could cover Officer Baskin or process a warrant for him. The trial court specifically noted that Officer Hsu was responsible for monitoring Medina and could not abandon his post.

Third, the hospital staff were going to move Lee. Officer Baskin had legitimate concerns about whether COVID-19 protocols would bar him from accompanying Lee. If the hospital were to have denied him access, this would have jeopardized Officer Baskin's ability to order a blood draw.

Fourth, it would have taken nearly three hours for Officer Baskin to obtain a warrant, by which time there would be no guarantee that he would have access to Lee.

Fifth, Lee's unconsciousness was a pressing medical emergency. In treating Lee's injuries, the hospital might have delayed a blood draw and diminished the accuracy of the blood test.

## III.

### The Trial Court Did Not Err by Denying Lee's Motion to Suppress

The Fourth Amendment states that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." (U.S. Const., 4th Amend.) A search performed without a warrant is per se unreasonable, subject to a few well-delineated exceptions. (*Katz v. U.S.* (1967) 389 U.S. 347, 357.) One such exception is for exigency, when officers are presented with "a compelling need to prevent the imminent destruction of evidence, and there is no time to obtain a warrant." (*Missouri v. McNeely* (2013) 569 U.S. 141, 167 (Roberts, C.J., conc.).)

Exigency exists in DUI cases when, examined under the totality of the circumstances, an officer with probable cause faces (1) dissipating BAC evidence and (2) some other factor which creates pressing health, safety, or law enforcement needs that would take priority over a warrant application. (*Missouri v. McNeely*, *supra*, 569 U.S. at p. 143; *Mitchell v. Wisconsin* (2019) 588 U.S. 840, 854 (plurality opinion); see also *Schmerber v. California* (1966) 384 U.S. 757, 772.) We conclude, based on the trial court's findings, that exigent circumstances existed such that drawing blood from Lee without a warrant did not violate the Fourth Amendment.

In *Schmerber v. California*, *supra*, 384 U.S. at pp. 768-769, an officer arrived at the scene of an accident and observed several objective signs of intoxication on the driver. These included the smell of alcohol on the

10

driver's breath, bloodshot, watery, and glassy eyes, and "similar symptoms of drunkenness." (*Id.* at p. 769.) The officer took the driver to the hospital and, as he received treatment for injuries he sustained in the accident, the officer arrested him. (*Id.* at pp. 758, 770-771.) Despite the driver's refusal, the officer then directed a hospital physician to draw the driver's blood and measure his BAC. (*Id.* at p. 758.) This confirmed the driver's intoxication. (*Ibid.*) The trial court denied the driver's motion to suppress the blood test evidence and the driver was convicted. (*Ibid.*)

The United States Supreme Court, affirming the driver's conviction, concluded that the blood draw did not violate the Fourth Amendment. (*Schmerber v. California*, *supra* 384 U.S. at p. 772.) It was objectively reasonable for the officer to believe that the dissipation of the driver's BAC threatened "destruction of evidence" vital to the investigation. (*Id.* at p. 770, quoting *Preston v. U.S.* (1964) 376 U.S. 364, 367.) In addition, as the driver's injuries demanded that the officer drive him to the hospital, the officer had no time to obtain a warrant. (*Schmerber*, at p. 771.) Finally, because medical professionals performed the test according to standard practice and the driver did not refuse "on grounds of fear, concern for health, or religious scruple,"[3] the test was reasonable. (*Ibid.*)

Here, the circumstances in which Officer Baskin ordered the blood draw mirror *Schmerber* and satisfy the first prong of the *Mitchell* test. As the trial court found, Officer Baskin did not have probable cause to obtain a search warrant until 12:58 a.m. If Officer Baskin had sought a warrant at

---

[3] Lee refused to submit to a blood draw over COVID-19 concerns, but Lee does not raise this issue on appeal and has therefore waived it. (*People v. Rhoden* (1972) 6 Cal.3d 519, 522-523, fn. 1.)

that time, he could not have ordered a blood draw until nearly three hours later, around 4:00 a.m. Because BAC dissipates over time, the evidence supports the trial court's finding that such delay would have jeopardized any BAC test's accuracy.[4]

The trial court found substantial evidence of "special facts" which support the second prong of the *Mitchell* test. The evidence at the suppression hearing established that COVID-19 limited IPD's patrol staffing to nine on-duty officers at the time of the accident. Eight of the IPD officers responded to the accident at Red Hill Avenue and MacArthur Boulevard. Only two of eight officers did not remain at the scene: Officer Baskin and Officer Hsu. Officer Hsu could not process the warrant because he was responsible for monitoring Medina. Under the circumstances, for Officer Baskin to have requested that a colleague cover or process the warrant for him would have unreasonably strained IPD's resources.

In concluding that the facts, as found by the trial court, support denial of the suppression motion, we do not "creat[e], *sub rosa*, a rule that exempts accident cases from the totality-of-the-circumstances inquiry that *McNeely* requires." (*People v. Meza* (2018) 23 Cal.App.5th 604, 612.) Nor do we suspend the Fourth Amendment during times of emergency. (*U.S. v. U.S. Dist. Ct. for E. Dist. of Mich.* (1972) 407 U.S. 297, 320.) Rather, we narrowly conclude that depletion of a police department's personnel by extraordinary circumstances and an emergency which diverts nearly all the department's resources may support a finding of exigent circumstances. (Cf. *People v.*

---

[4] The trial court cited the *Mitchell* plurality's conclusion that officers may "almost always order a warrantless blood test" when "the driver's unconsciousness or stupor requires him to be taken to the hospital." (*Mitchell v. Wisconsin*, *supra* 588 U.S. at p. 857 (plurality opinion).) However, Lee was not unconscious until well over an hour after the accident.

*Meza, supra,* 23 Cal.App.5th at pp.606, 611-612 [finding no exigency where only four officers remained at the scene of the accident, but the record made no mention of whether the department had more officers available].)

The trial court also found that, given the hospital's social distancing policies, Officer Baskin reasonably assumed that COVID-19 protocols would prevent him from accompanying Lee after the hospital moved him. The evidence at the suppression hearing supports the finding that the hospital staff unequivocally informed Officer Baskin that they planned to move Lee. Although the record does not indicate for certain that COVID-19 protocols would have barred Officer Baskin from accompanying Lee, we defer to the trial court's inference that Officer Baskin reasonably believed the COVID-19 protocols posed a risk which would interfere with the investigation. (*People v. Woods* (1999) 21 Cal.4th 668, 673; *People v. Manderscheid* (2002) 99 Cal.App.4th 355, 357; *Schmerber v. California, supra* 384 U.S. at p. 770 [affirming based on what the officer "might reasonably have believed"].)

Lee argues that Officer Baskin was not credible in his testimony that it would have taken nearly three hours to obtain a warrant and that he could have used the time available to him after arriving at the hospital to work toward obtaining one. In reviewing an order denying a motion to suppress we must accept the trial court's assessment of witness credibility. (*People v. Tully* (2012) 54 Cal.4th 952, 979.) Because witness credibility is the domain of the trial court, and Officer Baskin's testimony was not inherently improbable, we defer to the trial court's finding that it would have taken nearly three hours to obtain a warrant. (*People v. Flores* (2020) 9 Cal.5th 371, 412, fn. 9; *People v. Navarro, supra* 12 Cal.5th at p. 302.)

13

Lee cites *People v. Alvarez* (2023) 98 Cal.App.5th 531, 537 for the proposition that Officer Baskin's testimony about the time necessary to obtain a warrant was not credible and did not excuse the need for a warrant. In *Alvarez*, peace officers were dispatched to a fatal car accident. (*Ibid.*) Although the surviving driver showed no overt signs of having driven under the influence, an officer performed an HGN test and noted "a faint jerking" in the driver's eyes. (*Ibid.*) After transporting the driver to the hospital as a precaution, the officer smelled an odor of alcohol emanating from the driver, who admitted to drinking a beer earlier that day. (*Id.* at pp. 538, 544.) After the driver and officer talked for about fifteen minutes, the officer attempted to conduct a breath test, but the driver was unable or unwilling to provide a breath sample sufficient to generate a BAC readout. (*Id.* at pp. 538, 545.)

Once the officer told the driver that the officer wanted to obtain a blood sample, the driver stopped responding and did not communicate with hospital staff. (*Alvarez, supra,* 98 Cal.App.5th at pp. 538-539.) The officer ordered a warrantless blood test, which yielded a 0.05 percent BAC as well as traces of cocaine and THC. (*Id.* at p. 539.) At the suppression hearing the officer testified it would have taken about 30 to 45 minutes to obtain a telephonic warrant using the San Diego County electronic search warrant program. (*Id.* at pp. 541, 545.) The officer also testified that getting a warrant had not even crossed his mind at the time and he thought he could draw blood without a warrant if the driver is unconscious. (*Id.* at pp. 545, 547.)

The Court of Appeal, reversing the judgment of conviction, concluded that exigent circumstances were not present to permit a warrantless blood draw from the driver. (*Alvarez, supra* 98 Cal.App.5th at p. 537.) Because the driver was conscious and available to the officer for about ninety minutes and obtaining a warrant would only take thirty to forty-five

minutes, the court concluded that the officer had ample time to obtain a warrant. (*Id.* at pp. 544-545.)

Lee asserts the contrast between the 30 to 45 minutes needed to obtain an electronic warrant in *Alvarez* and Baskin's testimony that it would have taken nearly three hours for the IPD to get a warrant shows exigent circumstances were not present here. But in *Alvarez*, the officer had the option of using the San Diego County electronic search warrant program. At the suppression hearing, no evidence was presented of any such program available to Officer Baskin.

Lee argues that "Baskin clearly had probable cause for an arrest before he left the scene of the accident" and therefore "it behooved him to begin arranging for a chemical test as soon as possible." We decline to address the argument that Officer Baskin had probable cause to arrest Lee at the accident scene because Lee did not raise it at the suppression hearing. (*People v. Parker* (2022) 13 Cal.5th 1, 35, fn. 8; *People v. McDowell* (2012) 54 Cal.4th 395, 421.) Further, Lee simply makes that argument in passing and does not support it with legal authority and reasoned argument. (*People v. Gallardo* (2017) 18 Cal.App.5th 51, 69, fn. 11; see *People v. Stanley* (1995) 10 Cal.4th 764, 793.)

Lee argues that Officer Baskin would have had enough time to administer a breath test had he taken the breathalyzer with him to Lee's room at the hospital instead of leaving it in his patrol car. The record does not reveal why Officer Baskin left the breathalyzer in the patrol car. Officer Baskin testified that retrieving the breathalyzer was "quick" and only took several minutes. Given that hospital staff had been pressing Officer Baskin about the need to intubate Lee or render him unconscious, it is not certain from the record whether Officer Baskin would have been permitted to

15

administer a breath test even if he had taken the breathalyzer with him to Lee's room after arriving at the hospital. We decline to conclude the few minutes taken to retrieve the breathalyzer renders the blood test evidence inadmissible.

Lee draws our attention to a recent case, *People v. Castro* (July 1, 2026, D085986) __ Cal.App.5th __ [2026 Cal.App. Lexis 403], which concerned the legality of a blood draw from an unconscious driver-suspect who was first contacted by police at a hospital several hours after an accident. (*Id*. at pp. 2, 9-15.) Relying on *Alvarez, supra*, 98 Cal.App.5th at page 531, the Court of Appeal in *Castro* concluded the record did not support a finding of exigent circumstances sufficient to excuse the police from obtaining a warrant permitting them to draw blood from the suspect. (*Id*. at p. 2.)

Although the facts of *Castro* are similar in several respects to those of the present case, there are significant differences. Officer Baskin, unlike the police officer in *Castro*, was at the accident scene but had contact with Lee for only a few minutes before Lee was taken to the hospital. Officer Baskin testified it would have taken nearly three hours to obtain a warrant; in contrast, there was no such testimony from the officer in *Castro*. While in *Castro* the police officer did not balance the time it would take to obtain a warrant against other investigatory duties (*Id*. at p. 15), here, Baskin was concerned that no other IPD officer would be able to cover for him or get the warrant because COVID-19 had reduced IPD's staff and Officer Hsu was responsible for monitoring Medina. Baskin was unsure, due to COVID-19, that he would have access to Lee after he was transferred to a different ward. No similar testimony appears in *Castro*. The *Castro* court recognized that whether a warrantless blood draw from a drunk driving suspect is reasonable

16

must be determined on a case-by-case basis based on the totality of circumstances. (*Id.* at p. 7.) The totality of circumstances in the present case which differ significantly from those of *Castro,* support the trial court's finding that exigent circumstances excused obtaining a warrant.

**IV.**

### If the Trial Court Erred in Denying Lee's Motion to Suppress, the Error Was Harmless Beyond a Reasonable Doubt

Although we conclude that the Fourth Amendment did not bar the introduction of blood test evidence at trial, we determine that even if the trial court erred in denying Lee's motion, the error was harmless beyond a reasonable doubt. When an appellant contends that the trial court's error was of a constitutional dimension, we may affirm for harmless error only if the error was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Neal* (2003) 31 Cal.4th 63, 86.) Under this standard, reversal is required when there is a "reasonable possibility" that the error might have contributed to the verdict. (*People v. Aranda* (2012) 55 Cal.4th 341, 367.)

To convict Lee, the prosecution had to prove that Lee drove "under the influence of any alcoholic beverage." (Veh. Code § 23153(a).) As such, the prosecution presented the jury with evidence that Lee had (1) exhibited overt and objective signs of intoxication which included smelling of alcohol and not knowing the correct time, (2) admitted to consuming Hennessy (a hard liquor), (3) driven erratically and ran a red light, and (4) displayed indicia of intoxication in an HGN test.

Officer Baskin testified that Lee exhibited objective signs of impairment, including an odor of alcohol, slurred speech, and watery

bloodshot eyes. Officer Hsu also observed that Lee had slurred speech and red and bloodshot eyes. (E.g., *Baker v. Gourley* (2002) 98 Cal.App.4th 1263, 1264 ["a jury in a court of law could certainly conclude in a criminal prosecution that a driver was intoxicated based on such indicia as slurred speech and an unsteady gait without a valid chemical test"]; *People v. Wilson* (1985) 176 Cal.App.3d Supp.1, 9; *People v. Warlick* (2008) 162 Cal.App.4th Supp. 1, 8.) Lee admitted to Officer Baskin that he had consumed five or six shots of Hennessy starting at 7:00 p.m. and that he had felt the effects of alcohol. Lee also admitted he had smoked marijuana that morning. The HGN test showed that Lee's eyes exhibited all six indicia of intoxication. A physician who treated Lee at the hospital diagnosed him as having toxic encephalopathy, which the physician attributed to alcohol use. In light of this evidence, the evidence that Lee ran a red light at about 100 miles per hour suggests significant impairment.[5] (See *People v. Stockman* (2020) 56 Cal.App.5th 1093, 1098 [reaffirming that a jury may consider evidence of reckless driving to determine whether a defendant was intoxicated].)

Lee isolates each piece of evidence of intoxication and argues no single one was sufficient to establish guilt beyond a reasonable doubt. Regardless of whether any single piece of evidence establishes guilt beyond a doubt, the sum total of the evidence does. (See *People v. Aranda, supra*, 55 Cal.4th at p. 367.)

Officer Baskin testified that in his opinion Lee was impaired by alcohol and unable to safely drive a motor vehicle. When asked what stood

---

[5] Lee argues the witness who testified that he had driven over 100 miles per hour was not an expert on speed. No objection was made to that testimony. Whatever the exact speed might have been, Smith's testimony that a red car (Lee's car) sped past her, ran a red light, and struck a white car is sufficient to constitute evidence of impairment.

out in his investigation that help him reach his opinion, Baskin did not mention the results of the blood test. Officer Hsu testified that, based on his interactions with Lee at the accident scene and at the hospital, one of the causes of the collision was Lee driving under the influence.

Lee argues that "an error in admitting plainly relevant evidence which possibly influenced the jury adversely to a litigant cannot . . . be conceived of as harmless," so the trial court's admission of blood test evidence, if error at all, must be prejudicial error. (*Chapman v. California, supra,* 386 U.S. at p. 24.) If the trial court erred, the blood test evidence was not "highly prejudicial" to Lee in light of the overwhelming evidence that Lee was driving under the influence. (*Id.* at p. 24; see *People v. Meza, supra,* 23 Cal.App.5th at pp. 612-613.) To conclude that any admission of relevant evidence is prejudicial would be nearly tantamount to adopting the per se error rule rejected in *Chapman*. (*Chapman*, at pp. 21-22.)

Considering this compelling evidence that Lee was driving under the influence, we conclude any error in denying Lee's suppression motion and admitting evidence of the blood test was harmless beyond a reasonable doubt.

**DISPOSITION**

The judgment is affirmed.

SANCHEZ, J.

WE CONCUR:

MOTOIKE, P. J.

SERVINO, J.